UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,               Case No. 24-cr-20078

v.
                                             Hon. Shalina D. Kumar
GLENN E. KOTCHOUNIAN,                        United States District Judge

                    Defendant.
_____

## GOVERNMENT'S RESPONSE IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS
## THE INDICTMENT
_____

Glenn Kotchounian moves to dismiss count one (ECF No. 17) of the first superseding indictment, claiming that the statute prohibiting felons from possessing firearms and ammunition is facially unconstitutional under the Supreme Court's decision in *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 142 S. Ct. 2111 (2022). Kotchounian is a convicted felon several times over. His felony convictions include assault with a dangerous weapon, operating while intoxicated causing serious injury, home invasion—second degree, prisoner possessing weapons, and felon in possession of a firearm. Based on this status, he cannot possess firearms or ammunition that have traveled in or affected interstate commerce under 18 U.S.C. § 922(g)(1). As a result, the grand jury charged him with possessing ammunition as a felon in count one and two counts of possessing

machine guns in the first superseding indictment. (ECF No. 22, PageID.79–83.) Kotchounian's facial challenge to count one fails for three basic reasons.

First, the Supreme Court already recognized in *District of Columbia v. Heller*, 554 U.S. 570 (2008), that laws prohibiting felons from possessing firearms are presumptively lawful. *See id.* at 626 (cautioning that the Second Amendment is subject to important limitations and assuring nothing in the Court's decision would "cast doubt" on "longstanding prohibitions" including firearm possession by felons); *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (plurality opinion) (emphasizing that *Heller's* holding did not imperil longstanding regulatory measures such as prohibitions on felons possessing firearms). Consistent with *Heller*, *Carey* is binding Sixth Circuit precedent upholding the restriction on felons possessing firearms that does not conflict with *Bruen*. *United States v. Carey*, 602 F.3d 738, 740–41 (6th Cir. 2010) ("*Heller* states that the Second Amendment right is not unlimited, and, in fact, it is specifically limited in the case of felon prohibitions.") Although *Bruen* struck down a New York law and articulated the test for evaluating gun-safety laws, nothing in *Bruen* undermined *Heller's* conclusions that longstanding prohibitions on felon armament are presumptively valid. *See Bruen*, 142 S. Ct. at 2157 (Alito, J. concurring) ("Nor have we disturbed anything we said in *Heller* or *McDonald* . . . about restrictions that may be

2

imposed on the possession or carrying of guns.").

Second, based on the text and history of the Second Amendment, Kotchounian's purported interest in possessing guns falls outside of the Second Amendment's limited scope. In *Heller*, the Supreme Court interpreted the Second Amendment as codifying a *preexisting* right for law-abiding citizens to keep and bear arms for lawful purposes. *Heller*, 554 U.S. at 625 (explaining that the historical understanding of the scope of the Second Amendment limits it to "law-abiding" citizens who may possess firearms for lawful purposes); *McDonald*, 561 U.S. at 786 (noting that *Heller* did not recognize a broad "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose"); *Bruen*, 142 S. Ct. at 2122, 2131, 2134, 2138 & n.9 (repeating that the Second Amendment only protects the interests of "law-abiding, responsible" citizens to use arms for self-defense). Thus, Kotchounian's multiple felony convictions exclude him from the class of ordinary, responsible, law-abiding citizens whose rights the Second Amendment protects.

Third, even if this Court were to ignore *Carey* and undertake the type of historical analysis articulated in *Bruen*, categorical disarmament of felons is consistent with the nation's historical tradition of firearm regulation. In line with over 30 opinions issued by 15 district judges from the Eastern District of Michigan

3

that have ruled on this issue—and the recent Eighth Circuit decision in *United States v. Jackson*, No. 22-2870, 69 F.4th 495 (8th Cir. 2023)—this Court should deny Kotchounian's challenge. *See* Appendix A. The few courts to have ruled in favor of such a challenge did so on a narrow as-applied basis. *See Range v. Attorney General*, No. 21-2835, 69 F.4th 96, 2023 WL 3833404 (3d Cir. June 6, 2023) (en banc) ("Our decision today is a narrow one. Bryan Range challenged the constitutionality of 18 U.S.C. § 922(g)(1) only as applied to him given his violation of [making a false statement to obtain food stamps].); *United States v. Bullock*, ___ F.Supp.3d___; 2023 WL 4232309 (S.D. Miss. June 28, 2023). And *United States v. Ronald Williams*, 5:23-cr-20201, Dkt. No. 29, 2024 WL 731932 (E.D. Mich.), discussed more fully herein, is an outlier that disregards Sixth Circuit precedent.

## Argument

Kotchounian's facial challenge to § 922(g)(1) is meritless. The Supreme Court has described a facial challenge to a legislative Act as "the most difficult challenge to mount successfully." *United States v. Salerno*, 481 U.S. 739, 745 (1987). To succeed on a such a challenge, the movant must demonstrate that "no set of circumstances exists under which the Act would be valid," i.e., that the law is unconstitutional in all of its applications. *Id.* Kotchounian cannot make such a

showing here.

**I.   *Bruen* did not invalidate the Supreme Court's holding in *Heller* that Section 922(g)(1) is presumptively constitutional.**

For over a decade, the Supreme Court has endorsed the presumptive validity of laws prohibiting convicted felons from possessing firearms. No Supreme Court decision has cast doubt on any of Congress's long-standing categorical regulations as to who may possess firearms. In *Heller,* the Supreme Court listed a number of "presumptively lawful" regulations, which included "prohibitions on the possession of firearms by felons." *Heller*, 554 U.S. at 626–27, & n.26. And the Supreme Court in *Bruen*—while clarifying the standard by which to assess constitutional challenges under the Second Amendment—reiterated its prior declaration in *Heller* that such prohibitions remain presumptively valid. *See Bruen*, 142 S. Ct. at 2157 (Alito, J. concurring), 2162 (Kavanaugh, J., concurring, joined by Roberts, C.J.), and 2189 (Breyer, J., dissenting, joined by Sotomayor, J. and Kagan, J.). "The Supreme Court [in *Bruen*] left no doubt that it viewed its decision as faithful to *Heller*, not a departure from it." *United States v. Dubois*, No. 22-10829, 2024 WL 927030, at *5 (11th Cir. Mar. 5, 2024). Accordingly, this Court remains bound by *Heller*'s statement that prohibitions on felons possessing firearms are presumptively valid.

**A. In *Heller*, the Supreme Court recognized an individual right to bear**

5

**arms.**

Ever since the Supreme Court engaged in its first "in-depth examination of the Second Amendment," it noted that the Amendment is subject to important limitations. *Heller*, 554 U.S. at 635. The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *Heller*, the Supreme Court assessed a District of Columbia law requiring residents to keep lawfully owned firearms unloaded and disassembled in their homes. *Id*. at 575. The Court held that the law violated the Second Amendment, which protects the right of "law-abiding, responsible citizens" to keep firearms in their homes for self-defense. *Id*. at 635.

In striking down the law, the Supreme Court established a constitutional floor that the government may not disarm law-abiding, responsible citizens in their homes. But it noted that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Id.* at 626. To the contrary, the Court emphasized: "[N]othing in [its] opinion should be taken to cast doubt" on certain "presumptively lawful regulatory measures," such as "longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings,

6

or laws imposing conditions and qualifications on the commercial sale of arms."
*Id.* at 626–27, & n.26. The Court added that while the government may not
prohibit handguns "held and used for self-defense in the home," the legislature
retains a "variety of tools" for regulating handguns. *Id*. at 636.

### B. *Bruen* confirmed *Heller's* ruling on § 922(g)(1)'s presumptive validity.

*Bruen* neither overruled *Heller* nor invalidated *Heller's* statement regarding
§ 922(g)(1)'s presumptive validity. In *Bruen*, the Supreme Court extended *Heller*
to hold that the Second Amendment also "protect[s] an individual's right to carry a
handgun for self-defense outside the home." 142 S. Ct. at 2122. *Bruen* struck down
a New York law that required residents to demonstrate a "proper cause" to obtain a
license to carry a handgun outside the home, finding that the law "prevent[ed] law-
abiding citizens with ordinary self-defense needs from exercising their right to
keep and bear arms." *Id.* at 2122, 2156.

In striking down the law, *Bruen* rejected the "two-step" framework adopted
by most appellate courts after *Heller*. The two-step approach "combine[d] history
with means-end scrutiny" to assess the constitutionality of regulations affecting
Second Amendment rights. *See id*. at 2125–26. The Court observed that "[s]tep one
of the predominant framework is consistent with *Heller*, which demands a test
rooted in the Second Amendment's text, as informed by history." *Id.* at 2127. But

the Court "decline[d] to adopt" the second step of that framework, noting that "*Heller* … do[es] not support applying means-end scrutiny in the Second Amendment context." *Id.* at 2126–27.

*Bruen* then announced the two-part standard for applying the Second Amendment. *Id*. at 2129. First, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id*. at 2129–30. Second, when a regulation burdens that conduct, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*. at 2130.

In articulating this standard, *Bruen* did not overrule any part of *Heller*. Quite the opposite. *Bruen* repeatedly relied on *Heller's* statements about the limits of the Second Amendment and the presumptive lawfulness of "longstanding prohibitions" on firearms possession. *Id*. at 2118, 2128, 2133, 2134. In fact, Justice Alito noted that *Bruen* does not "disturb[ ] anything that [the Court] said in *Heller* . . . about restrictions that may be imposed on the possession or carrying of guns." *Id.* at 2157 (Alito, J., concurring). And Justice Kavanaugh, joined by Chief Justice Roberts, emphasized that "the Second Amendment allows a 'variety' of gun regulations," reiterating *Heller's* assurances about not "cast[ing] doubt on longstanding prohibitions on the possession of firearms by felons." *Id*. at 2162

8

(Kavanaugh, J. and Roberts, C.J., concurring). These three concurring justices
provided integral votes for the majority opinion. And three other dissenting
Justices voiced the same opinion. *Id*. at 2189 ("Like Justice Kavanaugh, I
understand the Court's opinion today to cast no doubt on that aspect of *Heller's*
holding"—*i.e*., that prohibitions on the possession of firearms by felons and the
mentally ill, or laws forbidding the carrying of firearms in sensitive places, or laws
imposing conditions and qualifications on the commercial sale of arms are
presumptively lawful) (Breyer, J., dissenting, joined by Sotomayor, J. and Kagan,
J.). Thus, six Justices in *Bruen* affirmed that longstanding prohibitions on felons
possessing firearms remain presumptively lawful under *Heller*.

**C.**  **This Court is bound by *Carey*, which upheld § 922(g)(1) under
*Heller* without applying means-end scrutiny.**

Besides *Heller*, binding Sixth Circuit precedent forecloses Kotchounian's
motion. In *Carey*, 602 F.3d at 741, the Sixth Circuit held that § 922(g)(1) was
presumptively valid under *Heller* alone. ("In short, *Heller* states that the Second
Amendment right is not unlimited and, in fact, it is specifically *limited* in the case
of felon prohibitions."). In other words, the Sixth Circuit in *Carey* interpreted laws
prohibiting felons from possessing firearms as lawful without employing any type
of test that conflicts with *Bruen*. In *Tyler v. Hillsdale County Sheriff's Department*,
837 F.3d 678, 686–88 (6th Cir. 2016) (en banc), the Sixth Circuit again

9

acknowledged that the presumption language in *Heller* alone justified rejecting a Second Amendment challenge involving § 922(g)(1). *See also id*. at 714–15 (Moore, J., dissenting) ("We have relied on this language in *Heller* to reject Second Amendment challenges to felon-in-possession convictions under § 922(g)(1) without examining history or applying any level of means-end scrutiny.") (*citing Carey*, 602 F.3d at 741). *Carey* remains good law.

And even if *Heller's* presumption is characterized as dicta, *see, e.g., Tyler*, 837 F.3d at 686, the Sixth Circuit has also held that courts "are obligated to follow Supreme Court dicta, particularly when there is no substantial reason for disregarding it, such as age or subsequent statements undermining its rationale." *United States v. Marlow*, 278 F.3d 581, 588 n.7 (6th Cir. 2002) (*citing Gaylor v. United States*, 74 F.3d 214, 217 (10th Cir. 1996) ("this court considers itself bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements."). *See also United States v. Khami*, 362 F. App'x 501, 508 (6th Cir. 2010) (*Heller* dicta carries significant weight). As pointed out by the concurring and dissenting justices, nothing in *Bruen* undercuts the presumptive validity of felon-in-possession prohibitions.

*Bruen* does not jeopardize *Carey's* holding on § 922(g)(1) because *Carey*

did not rely on means-end scrutiny. This is why district courts that have upheld felon-in-possession laws without relying on any means-end scrutiny tests remain bound by their own circuits' laws. *See, e.g.*, *United States v. Hill*, 629 F.Supp.3d 1027, 1029 – 1031 (S.D. Calif., Sept. 20, 2022) (denying challenge to § 922(g)(1) because Ninth Circuit precedent was not "effectively overruled" by *Bruen*). Similarly, the Eighth Circuit held that nothing in *Bruen* overruled its precedent that unlawful aliens are not within the class of "law-abiding responsible citizens" under *Heller*—emphasizing that because the court arrived at this conclusion without employing means-ends scrutiny, *Bruen* did not overrule its precedent. *United States v. Sitladeen*, 64 F.4th 978, 984–87 (8th Cir. 2023). Accordingly, this Court remains bound by *Carey*'s holding that *Heller* did not overturn prohibitions against felons possessing firearms. Kotchounian's motion should be denied under *Carey*.

Nor does the recent opinion in *United States v. Ronald Williams*, 5:23-cr-20201, Dkt. No. 29, 2024 WL 731932 (E.D. Mich. Feb. 22, 2024) (Levy, J.) change this analysis. In *Williams,* the court stated that it was "unpersuaded" by the government's arguments with respect to *Carey*, and instead erroneously relied on the reasoning from *Tyler v. Hillsdale Cnty. Sheriff's Dep't*, 837 F.3d 678 (6th Cir. 2016), which addressed the constitutionality of a different statutory provision: 18 U.S.C. § 922(g)(4). *Id.* at *5. The court's logic was flawed, resulting in an outlier

opinion that should have no bearing on this Court's decision here. *See also United States v. Vaughn*, No. 23-5790, 2023 WL 9789018, at *1 (6th Cir. Sept. 28, 2023) ("We unambiguously held in *United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010), that felon-in-possession statutes do not violate the Second Amendment, and that remains the binding law in this circuit.")

Finally, the Sixth Circuit recently heard oral argument concerning whether § 922(g)(1) violates the Second Amendment as applied to the defendant. *United States v. Christopher Goins*, Case No. 23-5848 (6th Cir.) (Oral Argument March 21, 2024).

**II.    The text and history of the Second Amendment demonstrate that "the people" whose right it protects are only law-abiding, responsible citizens.**

In interpreting the Second Amendment's text and history, the Supreme Court has held that the Amendment's scope is limited to the community of law-abiding, responsible citizens. Kotchounian's felony convictions place him outside of that scope.

**A. The Supreme Court has interpreted the Second Amendment's text as protecting an individual right retained by law-abiding, responsible persons.**

"The people" whose rights the Second Amendment protects are law abiding, responsible members of the American polity, not felons. *Heller*, 554 U.S. at 635. In

*Heller*, the Court began its analysis of the Second Amendment by analyzing the Amendment's text to decide whether "the people" referenced in the Amendment was more likely a reference to individuals or the collective (the specific collective at issue there being the militia). *Id*. at 579–80. The Court began by explaining that "the people" is a term of art, which throughout other parts of the Constitution dealing with rights "unambiguously refers to all members *of the political community*, not an unspecified subset." *Id*. (emphasis added).

The Court then further explained that it found "the militia" to be too narrow a subset to be an appropriate reading of "the people" because the "militia" only included people who were male, able bodied, and within a certain age range. *Id*. at 580–81 ("Reading the Second Amendment as protecting only the right to 'keep and bear Arms' in an organized militia therefore fits poorly with the operative clause's description of the holder of that right as 'the people.'"). In that narrow context of discussing whether "the people" referred to an individual or collective right, the court stated that "the people" presumably referred to an individual right that belonged to "all Americans." *Id*. at 581.

But in presuming that the Second Amendment right belonged to "all Americans," the Court did not hold that "all Americans" included felons. Rather— after completing a thorough historical analysis—the Court articulated that the exact

interest protected by the Second Amendment's text was: "the right of *law-abiding, responsible* citizens to use arms in defense of hearth and home." *Id*. at 635 (emphasis added); *see also id*. at 644 (Stevens J., joined by Souter, Ginsburg, and Breyer, J.J., dissenting) (explaining how the *Heller* majority "limits the protected class" in multiple ways).

In *Bruen*, the Supreme Court confirmed—explicitly and repeatedly—that the right to keep and bear arms belongs only to ordinary, law-abiding citizens. *See Bruen*, 142 S. Ct. at 2122 (stating that *Heller* "recognized that the Second and Fourteenth Amendments protect the right of an *ordinary, law-abiding* citizen to possess a handgun in the home for self-defense" (emphasis added)); *id*. at 2131 (quoting *Heller's* statement that the Second Amendment protects "'the right of *law-abiding, responsible* citizens to use arms' for self-defense" (emphasis added)); *id*. at 2133 (stating that the historical inquiry should consider "how and why the regulations burden a *law-abiding citizen's* right to armed self-defense" (emphasis added)); *id*. at 2156 (holding that New York's licensing law violates the Second Amendment because "it prevents *law-abiding* citizens with ordinary self-defense needs from exercising their right to keep and bear arms" (emphasis added)). Indeed, the *Bruen* Court described the holders of Second Amendment rights as *law-abiding* citizens no fewer than fourteen times. Because Kotchounian is a

convicted felon five times over—and not a "law-abiding, responsible citizen[]"—
he is not a member of "the People" whose rights the Second Amendment protects.
Nor is his motivation (self-defense, gun collector, etc.) for possessing a firearm
relevant.

### B. The Second Amendment's history confirms the Supreme Court's interpretation of its text.

The Second Amendment's history likewise reveals that the right it enshrined
belonged only to law-abiding citizens. In *Heller*, after looking at the Amendment's
plain words, the Supreme Court examined the Amendment's history. The Court
explained that "it has always been widely understood that the Second Amendment,
like the First and Fourth Amendments, codified a *pre-existing* right." *Heller*, 554
U.S. at 592. In *Bruen*, the Supreme Court further elaborated that the Amendment
codified a compromise between the interests of *law-abiding, responsible* citizens
and the government. *See Bruen*, 142 S.Ct. at 2131 ("The Second Amendment 'is
the very *product* of an interest balancing by the people' and it 'surely elevates
above all other interests the right of law-abiding, responsible citizens to use arms'
for self-defense.").

Numerous courts of appeal have also concluded that felons are categorically
outside the Second Amendment's protection. The most recent is the Eighth Circuit
in *Jackson*, 2023 WL 3769242, *4–*7, which concluded that Section 922(g)(1) is

15

constitutional based on the presumption language in *Heller*, along with the repeated "assurances by the Supreme Court" in *McDonald* and *Bruen*. *Id*. at *4. Citing *Heller*'s admonition that nothing in *Heller* should cast doubt on felon-in-possession prohibitions, the Eighth Circuit also concluded that "there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)." *Id*.

The Eighth Circuit also relied on the historical analysis by the panel in *Range v. Attorney General*, 53 F.4th 262 (3d Cir. 2022) *reh'g en banc granted, opinion vacated*, 56 F.4th 992 (3d Cir. 2023). It relied on this history to show that legislatures have "longstanding authority and discretion to disarm citizens who are not 'law-abiding'—i.e., those who are 'unwilling to obey the government and its laws, whether or not they had demonstrated a propensity for violence.'" *Id*. at *4. Indeed, the original panel in *Range* conducted an extensive historical analysis before it concluded: "Our Court's own review of the historical record supports the Supreme Court's understanding: Those whose criminal records evince disrespect for the law are outside the community of law-abiding citizens entitled to keep and bear arms." *Range*, 53 F.4th at 273; *Jackson*, 2023 WL 3769242, at *5–*6.

*Jackson* does not stand alone. Many courts of appeal agree that the Second Amendment codified "a common-law tradition that permits restrictions directed at citizens who are not law-abiding and responsible." *United States v. Bena*, 664 F.3d

16

1180, 1183–84 (8th Cir. 2011); *Medina v. Whitaker*, 913 F.3d 152, 160 (D.C. Cir.

2019) (holding that "a felony conviction removes one from the scope of the Second

Amendment."); *United States v. Moore*, 666 F.3d 313, 319 (4th Cir. 2012) (holding

that a defendant with prior felonies "simply does not fall within the category of

citizens to which the *Heller* court ascribed the Second Amendment['s] protection .

. . "); *United States v. Yancey,* 621 F.3d 681, 684–85 (7th Cir. 2010) (explaining

that "most scholars of the Second Amendment agree that the right to bear arms was

tied to the concept of a virtuous citizenry and that, accordingly, the government

could disarm 'unvirtuous citizens.'" (quoting *United States v. Vongxay,* 594 F.3d

1111, 1118 (9th Cir. 2010)); *United States v. Rene E.*, 583 F.3d 8, 15–16 (1st Cir.

2009) ("Perhaps the most accurate way to describe the dominant understanding of

the right to bear arms in the Founding era is as . . . limited to those members of the

polity who were deemed capable of exercising it in a virtuous manner." (citation

omitted)).

In line with these circuits' holdings, Thomas Cooley explained in his

"massively popular 1868 Treatise on Constitutional Limitations," *Heller*, 554 U.S.

at 616, that "the people in whom is vested the sovereignty of the State . . . cannot

include the whole population," and that "[c]ertain classes have been almost

universally excluded"—including "the idiot, the lunatic, and the felon, on obvious

grounds," Thomas M. Cooley, *A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union* 28–29 (1868). Consequently, felons were historically excluded from "exercis[ing] the elective franchise," *id*. at 29, as well as from other, closely related "political rights," including the rights to "hold public office," to "serve on juries," and, most relevant here, "to bear arms," *see* Akhil Reed Amar, *The Bill of Rights* 48 (1998).

The recent Third Circuit opinion in *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023) (en banc), stands in stark isolation. But even the *Range* opinion acknowledges that "district courts are bound to follow their circuits' precedent[.]" *Id*. at 106. *Range* is non-precedential in the Sixth Circuit and contradicts the Sixth Circuit's *Carey* opinion while also lacking persuasive value.

Critical of the majority's reasoning, one dissenter pointed out that "the majority opinion commits our Court to a framework so indefinite as to be void for vagueness." *Id*. at *19 (Krause, J., dissenting). It is "unworkable" and offers no real guidance on how to apply its decision in other cases other than mere "conjecture." *Id*. at *29–*30 (Krause, J., dissenting). There are no standards offered to determine who the majority identified as "people like Range," *id*. at *8, and more significantly, who's not. The Third Circuit simply rejected the Supreme Court's emphasis on "law-abiding responsible citizens" as "expansive" and

"vague" that inappropriately "devolves authority to legislators to decide whom to exclude from 'the people.'" *Id*. at \*4–\*5. Moreover, the Third Circuit similarly rejected *Heller*'s statement that felon-in-possession laws are presumptively lawful because 18 U.S.C. § 922 was not longstanding "enough" and that Range would not have been considered under that law at the time of its enactment. *Id*. at \*5–\*6. This directly contradicts both the Eighth Circuit and Sixth Circuit cases that have explicitly deferred to *Heller*'s statement. As another dissenter observed, the Third Circuit engaged in a search for a historical twin to the felon-in-possession law rather than a historical analogy. *Id*. at \*16 (Shwartz, J., dissenting). Because the *Range* opinion contradicts the Sixth Circuit and lacks both precedential and persuasive value, the Court should give it no weight.

Even the Fifth Circuit—which invalidated a different subsection of § 922— did not question the validity of § 922(g)(1). *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023), *cert. granted*, involved a challenge to § 922(g)(8), which imposes firearm restrictions against those subject to domestic violence protection orders. The court specifically noted that "Rahimi was not a convicted felon or otherwise subject to another longstanding prohibition on the possession of firearms that would have excluded him." *Id*. at 452 (citing *Heller*, 554 U.S. at 626–27) (cleaned up). And *Rahimi* further noted, quoting the original *Range* panel, that *Heller*,

*McDonald*, and *Bruen* all "support that criminals, as a group, fall outside 'the people' and that § 922(g)(1) is well-rooted in the nation's history and tradition of firearm regulation." *Id*. (quoting *Range*, 53 F.4th at 273) (cleaned up). *See also United States v. Daniels*, 77 F.4th 337, 343 (5th Cir. Aug. 9, 2023) (citing *Rahimi* that felons were "historically stripped of their Second Amendment rights.").

As to § 922(g)(1), the Sixth Circuit has already held that felons may be categorically disqualified from possessing arms without violating the Second Amendment. *See Carey*, 602 F.3d at 741; *Khami*, 362 F.App'x at 508; *United States v. Frazier*, 314 F.App'x 801, 807 (6th Cir. 2008). That's because—consistent with this nation's history from the founding to present—legislatures have retained wide latitude to exclude felons from the political community. *See Hamilton v. Pallozzi*, 848 F.3d 614, 626 (4th Cir. 2017) (labeling a crime a felony represents a "determination that the crime reflects 'grave misjudgment and maladjustment'" such that a felon is not a "law-abiding, responsible citizen[]" for purposes of the Second Amendment."). Because the Sixth Circuit has already determined that § 922(g)(1) is valid under *Heller*, this Court must deny the motion.

### III. Congress's authority to categorically disarm all convicted felons is consistent with the tradition of firearms regulation in this nation.

Even if the Supreme Court had not already defined the Second Amendment in a way that categorically excludes felons, a review of "this Nation's historical

tradition of firearm regulation" would also compel upholding felons' categorical disarmament. *See Bruen*, 142 S. Ct. at 2126. Rather than repeat the historical record identified and analyzed by other courts, the government directs the Court to the panel opinion in *Range*, 53 F.4th at 271–85, the dissenting opinion of Judge Krause in *Range (en banc)*, 2023 WL 3833404, *17–*34, and the Eighth Circuit published opinion in *Jackson*, 2023 WL 3769242, *4–*7. *See also*, Brief for United States at 13–29, *United States v. Rahimi*, No. 22-215, Supreme Court of the United States (filed Aug. 14, 2021).[1]

## Conclusion

The Supreme Court has never cast doubt on the validity of § 922(g)(1). To the contrary, it recognized that Second Amendment rights belong only to law-abiding, responsible citizens. Congress enacted § 922(g)(1) to keep firearms out of the hands of a category of people who have demonstrated that they would present a

---

[1] Available at http://www.supremecourt.gov/DocketPDF/22/22-915/275296/20230814194956129_U.S.%20v.%20Rahimi%20J.A.pdf.

21

danger to the public if armed. The statute is constitutional, and this Court should deny Kotchounian's motion.

Respectfully submitted,

DAWN N. ISON
United States Attorney

Dated: June 5, 2024      s/Blaine Longsworth
                                  Assistant United States Attorney
                                  600 Church Street
                                  Flint, Michigan 48502-1280
                                  Phone: (810) 766-5177
                                  Blaine.longsworth@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 10, 2024, the foregoing document was electronically filed by an employee of the United States Attorney's Office with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

All parties

s/Kristi Bashaw
United States Attorney's Office

22